# EXHIBIT "A"

### *State of New Jersey*
OFFICE OF ADMINISTRATIVE LAW

<u>**FINAL DECISION GRANTING
RESPONDENT'S MOTION TO
DISMISS AND DENYING
PETITIONER'S CROSS-MOTION
FOR 2021 ESY**</u>
OAL DKT. NO. EDS 05048-21
AGENCY DKT. NO. 2021- 32881

**Z.H.,**[1]

    Petitioner,

      v.

**CINNAMINSON TOWNSHIP
BOARD OF EDUCATION,**

    Respondent.

_____

      **Ronald DeSimone**, Esq., for petitioner (Law Offices of Ronald DeSimone, P.C., attorneys)

      **Alyssa K. Weinstein**, Esq., for respondent (The Busch Law Group, L.L.C., attorneys)

Record Closed:  December 15, 2021         Decided:  February 8, 2022

BEFORE **CARL V. BUCK III**, ALJ:

---

[1] Petitioner represents himself in this action.  In the prior referenced action, from 2017, petitioner was a minor and was represented in that action by his parents.

## STATEMENT OF THE CASE

On June 2, 2021, petitioner Z.H. filed a due-process petition and a request for emergent relief with the Department of Education, Office of Special Education Policy and Dispute Resolution (SPDR).[2]  Z.H., who is an eighteen-year-old special-education student, seeks relief to continue his educational program at Y.A.L.E. School (YALE) until the age of twenty-one, with contribution from respondent Cinnaminson Township Board of Education (Cinnaminson) to YALE's tuition.   This, in contravention to an executed Settlement Agreement and Release, dated November 29, 2017,[3] (Agreement) (P-1d), between his parents and Cinnaminson, which petitioner asserts is void or illegal.  Petitioner seeks to vacate or set aside the Agreement, thus, permitting him to continue his placement and program at YALE until age twenty-one.   The emergent matter was heard by the Hon. Dorothy Incarvito-Garrabrant, ALJ, who issued an Order in the emergent matter.

## PROCEDURAL HISTORY

Petitioner filed this due-process petition with OSE on June 2, 2021.   OSE transmitted the matter to the Office of Administrative Law (OAL), where it was filed on June 3, 2021.  Respondent filed a motion to dismiss the petition, with prejudice, pursuant to N.J.A.C. 1:1-12.1, et seq., N.J.A.C. 6A:3-1.5(g), and N.J.A.C. 6A:3-1.10 on June 14, 2021.  The undersigned was assigned this case on September 13, 2021.  Petitioner filed an answer and cross-motion for the 2021 extended school year on September 27, 2021. Oral argument on the motion and cross-motion was held on October 6, 2021, and October 21, 2021, and thereafter this tribunal requested clarifying information, which was received on December 15, 2021.

---

[2]  The emergent-relief matter was heard by the Hon. Dorothy Incarvito-Garrabrant, ALJ, who issued a Final Decision on the emergent matter on June 11, 2021, under OAL Dkt. No. EDS 04744-21.  As Judge Incarvito-Garrabrant was appointed to the Superior Court in June 2021, the remaining due-process portion of this matter was assigned to the undersigned.

[3]  This settlement was approved by the Hon. Catherine Tuohy, ALJ, through a Final Decision Approving Settlement, dated December 11, 2017, in a case captioned W.H. & L.H. ex rel. Z.H. v. Cinnaminson Township Board of Education, and filed under OAL Docket No. EDS 09035-17.  (P-D.)

## **FACTUAL DISCUSSION**

For purposes of deciding this motion and cross-motion for summary decision, the following is a summary of the relevant facts derived from the contents of the petitions and from the arguments at the hearing, and therefore I **FIND** them as **FACT**.[4]

Z.H. is eighteen years old.  He has attended YALE for the last four years.[5]  Z.H. resides in Cinnaminson Township, Burlington County, with his parents.  Prior to ninth grade, Z.H. attended in-district public school in Cinnaminson.  Z.H. is a special-education student and classified as autistic.

In 2017, Z.H.'s parents, on his behalf, filed a due-process petition against Cinnaminson and unilaterally placed Z.H. at YALE.  Petitioners were represented by counsel.[6]  That matter was captioned W.H. & L.H. ex rel. Z.H. v. Cinnaminson Township Board of Education and filed under OAL docket number EDS 09035-17.  That litigation was resolved by settlement.  The Settlement Agreement, dated November 29, 2017 (P-1d), was approved through a Final Decision Approving Settlement, dated December 11, 2017.  (W.H. v. Cinnaminson Twp. Bd. of Educ., EDS 09035-17, Final Decision (Dec. 11, 2017).)  That Agreement, in paragraph 16, memorialized the unilateral placement of Z.H. at YALE.  Z.H.'s parents agreed to pay the first $10,000 of yearly tuition to YALE. Cinnaminson was to then reimburse Z.H.'s parents for the base tuition expended by them in excess of the first $10,000.  The Agreement provided that Cinnaminson's financial responsibilities would terminate on June 30, 2021, **if Z.H. were eligible to graduate**.  The only exception, provided for in paragraph 4, was that Cinnaminson was required to reimburse Z.H.'s parents for the base tuition expended by them for the 2021 extended-school-year (ESY) program at YALE if Z.H. provided proof that he was ineligible to graduate and did not graduate by June 30, 2021.

---

[4]  A number of the facts are reiterated from the Final Decision on Emergent Relief issued by the Hon. Dorothy Incarvito-Garrabrant, ALJ, on June 11, 2021.
[5]  Currently in the academic year 2021–2022 as his fifth year attending YALE.
[6]  Counsel for petitioners is not the same counsel as in the prior matter.

OAL DKT. NO. EDS 05048-21

Paragraph 16 holds Cinnaminson harmless, stating:

> . . . Therefore, the Petitioners agree, jointly and severally, to indemnify and hold forever harmless the Board, its officers, employees, administrators, and/or agents from any and all claims and actions that may at any time be made or instituted against them by anyone for the purposes of enforcing a claim for damages resulting from or relating to the educational placement, clinical services, evaluations and/or other related services or programs provided to Z.H. while enrolled at and/or attending Y.A.L.E. . . .
>
> [P-1d.]

In paragraph 18, the Agreement further provided that the terms were the total obligation, financial or otherwise, to Z.H.'s parents, stating:

> . . . It is expressly agreed that the Board's financial obligation under this Agreement represents the Board's total financial obligation to Petitioners with respect to Z.H.'s education, and that Petitioners agree to release the Board from any and all further educational responsibility or financial responsibility for Z.H. from the beginning of time through the end of time other than as set forth in this Agreement.
>
> [Ibid.]

In paragraph 19, the Agreement provided as follows:

> It is further expressly agreed and acknowledged that the Board shall have no obligation, financial or otherwise, for or towards Z.H.'s education beyond June 30, 2021. Petitioners agree and acknowledge that any education and related services they may desire or seek after June 30, 2021 will be provided by them outside of the District, will be funded entirely by them, and they will not be entitled to reimbursement, education, or services of any kind from the Board. However, pursuant to paragraph 4 of this Agreement, the Board acknowledges that if Z.H. attends ESY 2021 it shall reimburse the Petitioners an amount up to the Y.A.L.E. base tuition for ESY 2021.
>
> [Ibid.]

Z.H. attended YALE for the 2017–2018 and 2018–2019 school years without issue or dispute related to the claims raised in this matter.  Z.H. had educational service plans developed and implemented by YALE without Cinnaminson's input.   Z.H. attended YALE from September 2019 through March 17, 2020, in person without issue or dispute materially related to the claims raised in the instant application.  On March 17, 2020, pursuant to Governor Murphy's Executive Order, YALE transitioned to remote learning for the remainder of the 2019–2020 school year, which ended on June 22, 2020.  Subsequently, Z.H. attended the 2020 ESY program remotely.  YALE provided remote learning between September 8, 2020, and September 25, 2020, at which time it transitioned students to a hybrid schedule consisting of in-person learning in a socially distanced and health-compliant manner, and remote learning.   Subsequently, at different temporary periods during the 2020–2021 school year, YALE transitioned to remote learning as a result of COVID-19 cases in the school community.  Z.H. had an educational service plan developed and implemented by YALE for the 2020–2021 school year.  During this time, Z.H. suffered from anxiety, depression, and frustration. He received counseling from YALE.

During the 2020–2021 school year, Z.H. was in his fourth year of high school. Z.H. lost a portion of his special-education and related services that were provided for in his educational services plans from the transition to remote learning in March 2020 through the present.

Z.H. did not graduate from YALE on June 16, 2021.

An evaluation showed that academically Z.H. had proceeded with his education. (P-1c.)  YALE stated on June 22, 2021:

> During the meeting, it was discussed that [Z.] was able to successfully complete his academic requirements for high school graduation by passing his high school courses, meeting expectations of the Y.A.L.E. Scholar Program and meeting New Jersey high school graduation credit requirements.  However, it was noted by the IEP team that due to the Covid-19 Pandemic, [Z.] was unable to

successfully meet all of his IEP goals—including: Skill Development, Community Based Instruction, Mobility Training, and Peer Based Learning. In addition, it was discussed how missing out on in-person social and college-related opportunities such as in-person college classes . . . , in-person enrollment with the Office of Disabilities, Interest-Based social skills clubs, school dances, and class trips, hindered [Z.'s] ability to prepare for/meet his transition goals of independently attending college.

[P-1e.]

Thus, YALE determined that "an additional year of programming **would be best**." (P-1e, emphasis added.) It also stated:

The Y.A.L.E. School Team did not believe a continuation of high school academics would best serve [Z.], therefore, a discussion of post high school transition programming, specifically the S9 program was discussed as an option.

[P-1e.]

No statement on ESY was in that document. YALE did not recommend that Z.H. graduate in June 2021. YALE made no formal determination that he was eligible or ineligible to graduate. YALE did not issue Z.H. a diploma. Z.H. indicated that he wanted to attend YALE's transition program. YALE expressed concern about Z.H.'s emotional state and ability to transition, and in its proposed service plan dated May 14, 2021, YALE provided for Z.H. to attend its 2021 ESY program, and enter its Standard 9 (S9) transition program, which would permit Z.H. to continue his education through YALE's program at Camden County College, through which he would be able to take college courses, and have his related services provided to him by YALE. (P-1c.)

YALE does not issue high-school diplomas to S9 students until they have completed their individual S9 program. There is nothing in the prior Agreement, or anything submitted in this matter, that legally prevents Z.H. from attending the S9 program, should he choose to enroll.

The 2017 Agreement detailed herein was executed by Cinnaminson and Z.H. through his parents acting on his behalf, as he was a minor.   It provides that Cinnaminson's responsibility to reimburse the parents for tuition expenditures beyond the first $10,000 at YALE ends on June 30, 2021, **if Z.H. is eligible to graduate**.   It further provides that if Z.H. is ineligible to graduate, then Cinnaminson must reimburse his parents for Z.H.'s 2021 ESY program at YALE, per paragraph 4 of the Agreement. After that ESY program, Cinnaminson's financial and educational responsibilities to Z.H. cease.

The due-process application herein has been made to determine whether or not the Agreement is valid or if it should "be voided and given no affect as they are clauses that circumvent the Federal IDEA for the district to provide a free and appropriate public education to the Petitioner."  (P-1 at 30.)

## Petitioner

Z.H. argued that the COVID-19 pandemic and resulting remote instruction at YALE prevented him from receiving a free and appropriate public education (FAPE).  COVID-19 made it impossible for YALE to effectuate all components of his educational service plan between March 2020 and the present.  Historically, Z.H. did well academically; however, after March 2020 Z.H. had difficulty academically, managing his own time, and engaging in remote learning.  Z.H. suffered from frustration, anxiety, depression, and related emotional concerns which became progressively worse through the pandemic.   In part, these concerns arose from Z.H.'s remote learning; his lack of interaction with peers, teachers, and community; and his lack of supports and services that had been provided for in his educational plan.  Z.H. did advise YALE's counselor of his difficulties, and YALE increased his counseling to help alleviate his anxiety.

Z.H. argued that he did not receive social-skills training, mobility training, community interaction and training, vocational training, health and wellness training, contact with disabled and typical peers, lifestyle learning, driver's-education classes, and situational environmental learning, among other programs.  He understood that it may have been impossible for YALE to provide some of these programs and services during

the pandemic. Nevertheless, he maintained that he missed those essential services and was entitled to them. He submitted that he will emotionally spiral down if he does not receive these services in a program at YALE, and that his treating psychiatrist has issued a report and opinion consistent with Z.H.'s concerns. Z.H. submitted that missing these critical programs has left him unable to be self-sufficient and unable to support himself. Z.H. is not equipped to graduate. Z.H contended that he needs the transitional services that were not provided to him from March 2020 to the present. He contended that Cinnaminson must contribute to YALE's tuition for the transition program.

Z.H. argued that the Agreement is void and illegal as against the federal IDEA. Z.H. argued that the Agreement is contrary to public policy. Z.H. argued that Cinnaminson may not contract away its IDEA obligations to provide a FAPE to him by ending his education on June 30, 2021. This is violative of federal law. Z.H. argued that there is no force-majeure provision. Z.H. argued that the waiver of claims "until the end of time" by Z.H.'s parents in the Agreement is voidable.

Z.H. argued that he will suffer irreparable harm if he does not receive the services he missed and those he needs to transition to self-sufficiency and supporting himself. His emotional state will continue to worsen if he does not receive these services.

The missed education and related services were a critical part of his educational service plan and were required to prepare him for graduation and the transition to college or a career. Finally, Z.H. argued that the Agreement cannot be relied upon to prevent Z.H. from prevailing on the merits in this instance, in which it did not have any force-majeure or government health-emergency-shutdown provisions.

In balancing the equities of the parties, Z.H. argued that the detriments to Z.H. far outweigh Cinnaminson's detriments. Cinnaminson received CARES Act monies, which were to provide for students' special-education and related services. Z.H. contended that nothing in the Final Decision Approving Settlement issued by the ALJ on December 11, 2017, approved Cinnaminson divorcing from Z.H. and its obligations to provide a FAPE.

Z.H. argued that it is well settled that he is entitled to FAPE.  This was supported by the legislative bills and the CARES Act funding received by Cinnaminson, as the State and federal governments understood that special-education students need more resources to be guaranteed and provided their education and necessary related services.

## Respondent

The Board argued that Z.H.'s cross-motion for 2021 ESY should be denied and that, as there are no issues of fact, the law provides that its motion for summary decision should prevail.  Cinnaminson stated that Z.H. has attended YALE, which is an approved private school, for his high-school career.  In this regard, Z.H. has attended all four years of high school, and completed his senior year in 2020–2021.  Z.H.'s verified complaint indicated that Z.H.'s academic skills are on grade level, and that he displayed independence and good time-management skills during pandemic-related remote and hybrid learning periods.  Z.H.'s post-high-school goals include college, employment, and independent living.  Cinnaminson maintained that Z.H. was eligible to graduate in June 2021 and he voluntarily chose not to graduate.

Cinnaminson argued that the Agreement entered into in the previous litigation with Z.H.'s parents is controlling in the instant matter.  In the bargained-for exchange of the Agreement, Cinnaminson agreed to fund a substantial portion of YALE's tuition through reimbursement of Z.H.'s parents.  Cinnaminson is not in privity of contract with YALE.  In the Agreement, YALE was designated as a unilateral private-school placement by Z.H.'s parents and was not Z.H.'s stay-put placement.  Cinnaminson contended that there is no right to stay-put in this matter.  The parents agreed that Cinnaminson had no control over or contact with YALE and Z.H.'s education and services, as provided at YALE.  In this regard, paragraph 16 holds Cinnaminson harmless as follows:

> . . . Therefore, the Petitioners agree, jointly and severally, to indemnify and hold forever harmless the Board, its officers, employees, administrators, and/or agents from any and all claims and actions that may at any time be made or instituted against them by anyone for the purposes of enforcing a claim for damages resulting from or relating to the educational placement, clinical services, evaluations and/or other related

services or programs provided to Z.H. while enrolled at and/or attending Y.A.L.E. . . .

[P-1d.]

The parents agreed that Cinnaminson would have no further obligations to Z.H. after June 30, 2021, **if Z.H. were eligible to graduate**.  After June 30, 2021, Z.H.'s parents agreed they would be entirely responsible to fund Z.H.'s education and services. The only exception was that if petitioner were not eligible to graduate in June 2021, the Board would be responsible for payment for the 2021 ESY program.

Cinnaminson argued that the Agreement was approved by an ALJ on December 11, 2017, and that the Final Decision Approving Settlement indicates that it fully disposes of all issues in controversy and is consistent with the law.  Thus, Cinnaminson argued that the Agreement cannot be illegal or voidable.  It was not inconsistent with federal or State law.

Cinnaminson argued that Z.H. has failed to establish that he has had a break in the delivery of services, that he has viable issues concerning placement pending the outcome of the due-process proceedings, or that he has issues involving graduation or participation in graduation ceremonies, pursuant to N.J.A.C. 6A:14-2.7(r).  Cinnaminson contended that all services were rendered by YALE and not Cinnaminson, and a break in services, if any, does not implicate Cinnaminson.  Per the Agreement, Z.H. is not entitled to any placement pending the outcome of the due-process petition because Cinnaminson did not place Z.H. at YALE.   It was a unilateral placement.   Cinnaminson did not participate in Z.H.'s education for his four years at YALE.

Cinnaminson submitted that Z.H. failed to provide a basis on which his request may be granted by this tribunal.  Should a breach-of-contract action or other action related to voiding the 2017 Agreement be pursued, that would have to be in the appropriate court (not the OAL).

## LEGAL DISCUSSION AND CONCLUSIONS

### I.  Respondent District's Motion for Summary Decision

The New Jersey Uniform Administrative Procedure Rule N.J.A.C. 1:1-12.5 governs Cinnaminson's motion for summary decision.  The provisions of N.J.A.C. 1:1-12.5 mirror the language of R. 4:46-2 of the New Jersey Court Rules governing motions for summary judgment.  See Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954).  In connection therewith, all inferences of doubt are drawn against the movant and in favor of the party against whom the motion is directed.  Id. at 75.  A case may be dismissed before it is heard if, based on the papers and discovery which have been filed, it can be decided "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law."  N.J.A.C. 1:1-12.5(b).  Furthermore, as the OAL rules do not provide for a motion to dismiss, the same standard for summary decision is applied to the motion to dismiss.  See B.G. ex rel. B.G. III v. Bd. of Educ. of East Orange, 2008 N.J. AGEN LEXIS 329 (April 25, 2008), adopted, Comm'r, 2008 N.J. AGEN LEXIS 1302 (May 20, 2008) (applying the standards for summary decision to a motion to dismiss).

In Brill v. Guardian Life Insurance Co., 142 N.J. 520 (1995), the New Jersey Supreme Court addressed the appropriate test to be employed in deciding the motion:

> [A] determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party.  The "judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

> [Brill, 142 N.J. at 540 (citations omitted).]

The District argues that petitioner's application should be dismissed because the terms and conditions of the 2017 Agreement address the District's obligation to provide

him with FAPE and govern the situation. Petitioner asserts that, due to a number of issues, including COVID-19 and the circumstances flowing from COVID-19, he has not been provided with FAPE, and therefore refusal of Cinnaminson to pay for additional time at YALE constitutes a denial of FAPE.

As discussed further below, the basic facts are not in dispute in this matter, and Cinnaminson has established, as the moving party, that it is entitled to prevail as a matter of law. The interpretation of the facts does not govern, the facts themselves govern.

### a. The Individuals with Disabilities Education Act (IDEA) and FAPE

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1487, requires states to ensure that all children with disabilities have access to a free appropriate public education (FAPE) that is designed to meet their unique needs, and establishes procedural due-process rights for the children. Each school district's board of education must have policies, procedures, and programs to ensure that all students with disabilities between the ages of three and twenty-one have access to a FAPE and are educated to the maximum extent appropriate in the least restrictive environment (LRE). N.J.A.C. 6A:14-1.2(b). Education in the LRE requires, whenever possible, that the student is educated in the regular educational environment with students who are not disabled, i.e., the student is included in the mainstream education system. N.J.A.C. 6A:14-4.2; 20 U.S.C. § 1412(a)(5)(A); 34 C.F.R. § 300.114 (2021); see also Oberti v. Bd. of Educ. of Clementon Sch. Dist., 995 F.2d 1204, 1214 (3d Cir. 1993).

According to the United States Supreme Court, an education is "appropriate" if it includes "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 203 (1982). The instructions and services must be provided at public expense, meet state educational standards, approximate grade levels used in regular education, and comport with the student's IEP. Id. at 189. In New Jersey, the education offered to a student with a disability must be sufficient to confer some educational benefit and provides the foundation on which the student's IEP is built.

Lascari v. Ramapo Indian Hills Reg'l Sch. Dist., 116 N.J. 30, 47-48 (1989); see also Oberti, 995 F.2d at 1213  (holding that Rowley requires that an IEP offer "more than a trivial or de minimis educational benefit"); Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 182, 184–85 (3d Cir. 1988) (IEP must provide "significant learning" and confer a "meaningful benefit" to a student with disabilities); Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 248 (3d Cir. 1999) (the benefit provided requires "a student-by-student analysis that carefully considers the student's individual abilities").

Additionally, the IDEA requires that, when necessary, a FAPE must include related services.  20 U.S.C. § 1401(9); 34 C.F.R. § 300.34(a) (2021); N.J.A.C. 6A:14-1.1(b)(3), (d); N.J.A.C. 6A:14-3.9(a); see also Rowley, 458 U.S. 176, 181.  Related services means:

> [T]ransportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.
>
> [20 U.S.C. § 1401(26)(A); see 34 C.F.R. § 300.34(a) (2021); N.J.A.C. 6A:14-3.9.]

Relatedly, the IDEA requires that a student's IEP include transition services, once the student reaches sixteen years old, and updated annually thereafter.  20 U.S.C. § 1414(d)(1)(A)(i)(VIII);  34  C.F.R.  §  300.320(b)  (2021);  see also  20  U.S.C. § 1400(d)(1)(A) (a FAPE includes preparing a student for employment and independent living).  In New Jersey, transition counseling and transition services begin at age fourteen.  N.J.A.C. 6A:14-3.7(e)(11).  And by age sixteen, a student's IEP must include

measurable post-secondary goals related to training, education, employment, and independent living.  N.J.A.C. 6A:14-3.7(e)(12).

Therefore, under the IDEA, if a student's IEP includes related or transitional services, a total loss of such services may qualify as a denial of a FAPE, even if the student was provided, and passed, the standard academic courses and tests.  In this particular matter, Z.H. claims that due to the change to remote learning, the following special-education related services were not provided:  social-skills training, mobility training, community-based instructions, health and wellness, transitional programs, and vocational-program training.  (Pet'r's Br. in Opposition, at ¶¶ 9–13 (Aug. 4, 2021)).

In this matter, YALE did not recommend that Z.H. graduate on June 16, 2021; however, YALE made no formal determination that Z.H. was eligible or not eligible to graduate.  YALE recommended that Z.H. continue in its S9 transition program if he chooses to do so (but did not recommend additional academic courses at the high-school level).  YALE did not give Z.H. his high-school diploma.  YALE is concerned about Z.H.'s emotional state and ability to transition, **but did not state that he is ineligible to graduate**, thereby triggering paragraphs 4 and 19 of the Settlement Agreement.  There has been no dispute that YALE did not state that Z.H. is not eligible to graduate.  Therefore, I **CONCLUDE** that, barring an affirmative statement from YALE that Z.H. is not eligible to graduate, he is eligible to graduate from the high-school program anticipated in the 2017 Agreement.

Petitioner contends that he has not been provided with FAPE, and under the IDEA he should be allowed to continue his education.  The issue of petitioner's continuing his education is a false premise—he is allowed to continue at YALE.  The real issue is, who will pay for this additional year at YALE?  The payment for petitioner's four years of high-school education was dealt with in the Settlement Agreement from 2017.  The terms are plain and unambiguous.  Both parties were represented by qualified counsel.  No coercion or adhesion is alleged by either party, although petitioner now asserts that the terms were illegal and/or void and/or against public policy.

OAL DKT. NO. EDS 05048-21

Having documented this information, the controlling factor is the term(s) of the 2017 Agreement/contract between the parties.

**b.  The 2017 Agreement**

As part of his claim, Z.H. has requested that the clauses of the 2017 Settlement Agreement limiting Cinnaminson's obligations to Z.H. be voided, claiming that they circumvent the IDEA's requirement that the District provide him with a FAPE.   The relevant portions of the Agreement are as follows:

> (4)     The Board further agrees to reimburse the Petitioners for the base tuition expended by them for ESY 2021 at Y.A.L.E. if and only if Z.H. is not eligible to, and does not, graduate high school by June 30, 2021. . . .

> (16)   The Petitioners acknowledge and agree that Z.H.'s placement at Y.A.L.E. . . . is, and shall for all purposes be deemed, a unilateral placement.   . . . Therefore, the Petitioners agree, jointly and severally, to indemnify and hold forever harmless the Board, its officers, employees, administrators, and/or agents from any and all claims and actions that may at any time be made or instituted against them by anyone for the purposes of enforcing a claim . . . resulting from or relating to the educational placement, clinical services, evaluations and/or other related services or programs provided to Z.H. while enrolled at and/or attending Y.A.L.E. . . .

> (18)   It is expressly agreed that the Board's obligations under this Settlement Agreement and Release, financial and otherwise, as set forth in the above paragraphs, represents the Board's total obligations, financial and otherwise, to Petitioners with respect to Z.H.'s education from the beginning of time through the end of time.   It is expressly agreed that . . . Petitioners agree to release the Board from any and all further educational responsibility or financial responsibility for Z.H. from the beginning of time through the end of time other than as set forth in this Agreement.

> (19)   . . . Petitioners agree and acknowledge that any education and related services they may desire or seek after June 30, 2021 will be provided by them outside of the District, will be funded entirely by them, and they will not be

entitled to reimbursement, education, or services of any kind
from the Board.

[P-1d.]

In New Jersey, settlement agreements in special-education disputes are enforced under general principles of contract law. Lauren W. v. DeFlaminisi, 480 F.3d 259, 275 (3d Cir. 2007); D.R. v. E. Brunswick Bd. of Educ., 109 F.3d 896 (3d Cir. 1997). "A contract arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (internal quotations omitted). When parties "agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Ibid. When the parties fail to agree to one or more essential terms, the "courts generally hold that the agreement is unenforceable." Ibid. But, once "the basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intention to be bound." Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992) (quoting Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 377 (App. Div. 1975)). Absent a demonstration of "fraud or other compelling circumstances," the courts are to honor and enforce the contract, even if later circumstances make the agreement less beneficial to a party. Pascarella v. Bruck, 190 N.J. Super. 118, 124–25 (App. Div. 1983); Zuccarelli v. State Dep't of Envtl. Prot., 326 N.J. Super. 372, 381 (App. Div. 1999).

Additionally, it appears that the OAL does not have the jurisdiction to either enforce or set aside an enforceable contract. A.P. v. Dennis Twp. Bd. of Educ., 1998 N.J. AGEN LEXIS 346 (May 13, 1998); see 20 U.S.C. § 1415(e)(2)(F)(iii), (f)(1)(B)(iii)(II) ("settlement agreements arising out of mediation and the resolution process under the IDEA are enforceable in any State court of competent jurisdiction or in a district court of the United States.")

Regardless, if the agreement is recent and for a definite time period, the parties were represented by counsel, and the terms of the agreement are unambiguous in regard to the waiver and release of claims, then a settlement waiving a student's rights under the IDEA may be upheld. J.K. v. Voorhees Twp. Bd. of Educ., 2012 N.J. AGEN

LEXIS 67 (February 10, 2012); see also I.K. v. Sch. Dist. of Haverford Twp., 961 F. Supp. 2d 647, 688 n.8 (E.D. Pa. 2013), aff'd, 567 Fed. Appx. 135 (3d Cir. 2014) (citing cases showing that a settlement agreement will substitute for a FAPE, and that can include a waiver of rights under the IDEA).  But see D.R. v. E. Brunswick Bd. of Educ., 109 F.3d at 901 (implying that a change in the student's circumstances, such as their disability-related needs, may make a settlement agreement no longer enforceable). While New Jersey courts are disinclined to enforce a commercial contract entered into by parents that waive their child's rights, this appears to be limited to those that waive constitutional rights (i.e., parental and reproduction rights) and future personal injuries. See Loesch v. Vassiliades, 17 N.J. Super. 306, 309 (App. Div. 1952); Hojnowski v. Vans Skate Park, 187 N.J. 323, 336–38 (2006).

## II. Petitioner's Cross-Motion for 2021 ESY

Petitioner also filed a cross-motion related to payment of 2021 ESY, as petitioner did not graduate in June 2021.

As stated above, YALE did not recommend that Z.H. graduate in June 2021. However, YALE made no formal determination that he was eligible or ineligible to graduate.  YALE expressed concern about Z.H.'s emotional state and ability to transition, and in its proposed service plan dated May 14, 2021, YALE provided for Z.H. to attend its 2021 extended-school-year program, and enter its Standard 9 transition program, which would permit Z.H. to continue his education through YALE's program at Camden County College, through which he would be able to take college courses, and have his related services provided to him by YALE.

However, in no document provided to this tribunal is it stated that petitioner was not eligible to graduate in 2021.  Therefore, no trigger of the terms of paragraph 4 has occurred.

> (4)     The Board further agrees to reimburse the Petitioners for the base tuition expended by them for ESY 2021 at Y.A.L.E. if and only if Z.H. is not eligible to, and does not graduate high school by June 30, 2021. . . .

OAL DKT. NO. EDS 05048-21

[P-1d.]

For these reasons, I **CONCLUDE** that respondent has met its burden of proof to demonstrate, through competent evidence, that the terms of the 2017 Agreement may not be negated or altered by this tribunal.  Accordingly, I **CONCLUDE** that respondent's motion for summary decision should be **GRANTED**.  I further **CONCLUDE** that Z.H. has not met his burden of proof, through competent evidence, that the circumstances and facts of his completion of the 2020–2021 academic year dictate that respondent be responsible for payment of 2021 ESY.  Accordingly, I **CONCLUDE** that petitioner's cross-motion for payment of 2021 ESY should be **DENIED**.

I further **CONCLUDE** that any or all of the issues regarding the voidability of the 2017 Agreement may be taken up in an action in a court of competent jurisdiction.

### ORDER

Based on the foregoing, it is hereby **ORDERED** that respondent's motion for summary decision is **GRANTED** and the petition is **DISMISSED**.  It is further **ORDERED** that petitioner's cross-motion for payment of 2021 ESY is **DENIED**.

OAL DKT. NO. EDS 05048-21

This decision is final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. §.300.514 (2021) and is appealable by filing a complaint and bringing a civil action either in the Law Division of the Superior Court of New Jersey or in a district court of the United States.  20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516 (2021).

February 8, 2022
DATE

**CARL V. BUCK III**, ALJ

Date Received at Agency:

February 8, 2022

Date Mailed to Parties:
CVB/sb/lam

## LIST OF EXHIBITS

**For petitioner:**

P-1     September 23, 2021, cross-motion, with attachments

      a.     Annual Review May 24, 2019

      b.     Annual Review June 5, 2020

      c.     Annual Review May 14, 2021

      d.     Settlement Agreement and Release November 29, 2017

      e.     June 23, 2021, correspondence

      f.     June 23, 2021, 4:47 p.m. email

      g.     Yale Agreement June 25, 2021

      h.     Psychiatric Evaluation May 25, 2021

      i.     Developmental and Behavioral Evaluation July 8, 2021

**For respondent:**

R-1     June 14, 2021, Motion to Dismiss

R-2     August 9, 2021, Reply Brief and Opposition to Cross-Motion