**EXHIBIT "E"**

Jared S. Schure - ID #014042010
METHFESSEL & WERBEL, ESQS.
2025 Lincoln Highway, Suite 200
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
1(732) 248-2355
schure@methwerb.com
Attorneys for Cinnaminson Township Board of Education
Our File No. 84698 JSS

| | |
|---|---|
| W.H. AND L.D., INDIVIDUALLY AND O/B/O Z.H.<br><br>Petitioner,<br><br>V.<br><br>CINNAMINSON TOWNSHIP BOARD OF EDUCATION<br><br>Respondent. | NEW JERSEY DEPARTMENT OF EDUCATION/OFFICE OF ADMINISTRATIVE LAW<br><br>AGENCY REF. NO.: 2017-26286<br><br>OAL DKT. NO.: EDS 09035-2017 S<br><br><br>SETTLEMENT AGREEMENT AND RELEASE |

WHEREAS, Petitioners W.H. and L.D. ("Petitioners") are the parents of Z.H. (D.O.B. 5/6/2003), a student residing within the Cinnaminson Township School District ("District"), a kindergarten-through-twelfth-grade public school district operated by the Cinnaminson Township Board of Education ("Board"); and

WHEREAS, a dispute between the parties arose with regard to Z.H.'s placement and programming pursuant to the Individuals with Disabilities Education Act ("IDEA") and other state and federal laws and regulations; and

WHEREAS, Petitioners filed a Petition for Due Process ("Petition") contending that the educational programs and placements offered by the Board were inappropriate and deprived Z.H. of a free and appropriate public education ("FAPE"), which Petition was assigned Agency Reference Number 2017-26286 and Office of Administrative Law Docket Number EDS 09035-2017 S; and

WHEREAS, the Petitioners have indicated their desire to unilaterally place, and have unilaterally placed, Z.H. at the Y.A.L.E. School in Cherry Hill, New Jersey ("Y.A.L.E."); and

WHEREAS, the Board maintains that it has at all times offered an appropriate program and placement to Z.H., thereby providing Z.H. with a FAPE reasonably calculated to confer meaningful educational benefit in the least restrictive environment; and

WHEREAS, the Board maintains that, at all times relevant, it complied fully with all federal and state special education laws, including, but not limited to, the IDEA, IDEIA, ADA, and Section 504 of the Rehabilitation Act, and provided Z.H. with a FAPE reasonably calculated to confer meaningful educational benefit in the least restrictive environment; and

WHEREAS, the parties are desirous of resolving the issues raised by the Petition, and have reached an amicable resolution thereby avoiding the time and expense associated with further litigation.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein, the parties agree as follows:

1. The Petitioners will pay and be entirely and solely responsible for paying the first $10,000 towards the base tuition at Y.A.L.E. for the 2017-2018 school year (including ESY 2018); the 2018-2019 school year (including ESY 2019); the 2019-2020 school year (including ESY 2020); and the 2020-2021 school year.

2. The Board agrees to reimburse the Petitioners for Y.A.L.E. tuition expended by them for ESY 2017 in the amount of $6,317.30 within thirty (30) calendar days of the issuance by an Administrative Law Judge of a Final Order approving this Agreement, provided Petitioners submit a fully executed enrollment contract for ESY 2017 as well as proof that they incurred, and paid for, said tuition.

3. The Board further agrees to reimburse the Petitioners for Y.A.L.E. tuition expended by them beyond the first $10,000, which shall be the Petitioners' sole responsibility, for the 2017-2018 school year (including ESY 2018); the 2018-2019 school year (including ESY 2019); the 2019-2020 school year (including ESY 2020); and the 2020-2021 school year.

4. The Board further agrees to reimburse the Petitioners for the base tuition expended by them for ESY 2021 at Y.A.L.E. if and only if Z.H. is not eligible to, and does not, graduate high school by June 30, 2021. Reimbursement pursuant to this paragraph shall be

contingent upon the Petitioners timely providing the District's Business Administrator with a fully executed copy of the ESY 2021 enrollment contract; proof that they incurred, and paid for, the ESY 2021 tuition; and proof that Z.H. was not eligible to, and did not, graduate from high school by June 30, 2021.

5. The reimbursement described in Paragraph 3 shall be made monthly but is contingent upon the Petitioners timely providing the District's Business Administrator with fully executed copies of all Y.A.L.E. enrollment or other contracts, and proof that Petitioners incurred, and paid for, the expenses for which they seek reimbursement. The Petitioners' $10,000 obligation, described in Paragraph 1, shall be divided into ten-month increments (i.e., Petitioners shall be responsible for paying $1,000 per month each month, September through June). Accordingly, the Board's reimbursements to Petitioners shall adhere to the following formula: Reimbursable Amount = Monthly Base Tuition - $1,000.

6. It is acknowledged and understood that Y.A.L.E. sets and charges tentative tuition rates during its regular school year and extended school year programs. At the conclusion of its regular school year and extended school year programs, the tentative tuition rates are retroactively set based on an audit of the expenses actually incurred by Y.A.L.E. As a result of this process, at the conclusion of its regular and extended school year programs Y.A.L.E. may

assess additional tuition or may issue a refund for overpayment of tuition. The Board shall be responsible for paying any additional tuition assessed in this manner at the conclusion of the school year and/or extended school year. However, in the event that Y.A.L.E. issues any tuition refunds, it is understood and acknowledged that those refunds are due and owing the Board, and Petitioners will provide the Board's Business Administrator with a certified check in the amount of the refund, along with a copy of the refund check from Y.A.L.E., within five (5) business days of receiving the refund from Y.A.L.E. Additionally, the Board shall be entitled to receive, directly from Y.A.L.E., statements of refunds or additional tuition charges assessed by Y.A.L.E. Petitioners agree to execute any release or other documents necessary to facilitate the Board's doing so.

7. Should Z.H. become unable to attend Y.A.L.E. for any reason, the Petitioners will have the option of unilaterally placing Z.H. at any other placement of their choosing. Should the Petitioners do this, it is understood and acknowledged that such placement, like the Y.A.L.E. placement, will be deemed a unilateral placement for all purposes, and the Board's financial responsibility for such placement shall be equal to but not exceed its financial responsibility as though Z.H. continued to attend Y.A.L.E., as described in Paragraphs 1, 3, 4, 9, and 14 of this Agreement.

8. In the alternative, should Z.H. become unable to attend Y.A.L.E. for any reason, the Petitioners shall have the right to enroll Z.H. as a student in the District and Z.H. will attend an in-District program. In this event, the Petitioners agree and acknowledge that they hereby forfeit their right to, and shall have no right to institute any litigation, or file any complaint, grievance, or challenge of any nature whatsoever regarding or relating to the District's proposed program. However, it is agreed and acknowledged that the Petitioners may challenge the appropriateness of only the related services offered by the District.

9. The Board will provide, at its expense, round-trip transportation between Z.H.'s home and Y.A.L.E. in Cherry Hill. Transportation shall be limited to one round trip per day. Should Z.H. become unable to attend Y.A.L.E. and the Petitioners exercise their option to unilaterally place Z.H. in another out-of-District placement of their choice, the District will be responsible for transporting Z.H. to that placement only if, and only as long as, it already has a bus route to that placement. Otherwise, the Petitioners shall bear sole financial responsibility for transporting Z.H. to and from the unilateral placement. The Board shall have no responsibility, financial or otherwise, for this transportation.

10. The Board agrees to authorize its insurance carrier to make payment of $10,000.00 in counsel fees to Petitioners' counsel,

Hillary Freeman, Esq. Payment shall be made via check made out to Freeman Law Offices within thirty (30) calendar days of the issuance by an Administrative Law Judge of a Final Order approving this Agreement. However, it is acknowledged and understood that this payment is contingent upon Petitioners' counsel providing the Board's attorney with an executed W-9 form and legal bills substantiating that the Petitioners incurred at least $10,000 in legal fees for this litigation.

11. Petitioners acknowledge and understand that all payments made to them by the Board must first be approved by the Board at a regularly scheduled meeting of the Board. Payment for reimbursement shall be issued within fourteen (14) calendar days of the meeting at which it is approved.

12. Within five (5) business days of approval of this Settlement Agreement and Release, Petitioners shall withdraw Z.H. as a student of the District.

13. The Petitioners understand and agree that this Settlement Agreement and Release does not obligate the Board to undertake any expenditure other than the expenditures specifically and explicitly set forth above.

14. The Petitioners understand and agree that, under this Agreement, they are solely responsible for the costs of any evaluations, extracurricular activities and trips, tutoring, related services such

including but not limited to speech-language therapy, counseling, therapeutic services, medical and psychiatric services, consultations, or any other costs that may arise from or be associated with Z.H.'s attendance at Y.A.L.E. or any other school that are not included in Y.A.L.E.'s or any other school's base tuition charge.

15. The Petitioners agree to complete and submit any forms, including vouchers and purchase orders, as necessary in order to receive reimbursement to which they are entitled pursuant to this Agreement.

16. The Petitioners acknowledge and agree that Z.H.'s placement at Y.A.L.E., or any school at which they might place Z.H. pursuant to Paragraph 3 of this Agreement, is, and shall for all purposes be deemed, a unilateral placement. The District neither endorses nor recommends Z.H.'s placement at Y.A.L.E. or any other school at which Petitioners might place Z.H. pursuant to Paragraph 3 of this Agreement, nor does the District concede that such a placement is necessary to provide Z.H. with FAPE. The Parties acknowledge and agree that the Board has no control or supervision over Y.A.L.E.'s program or the program of any other school at which the Petitioners may place Z.H. pursuant to Paragraph 3 of this agreement. Therefore, the Petitioners agree, jointly and severally, to indemnify and hold forever harmless the Board, its officers, employees, administrators, and/or agents from

any and all claims and actions that may at any time be made or instituted against them by anyone for the purposes of enforcing a claim for damages resulting from or relating to the educational placement, clinical services, evaluations and/or other related services or programs provided to Z.H. while enrolled at and/or attending Y.A.L.E. or any other school at which they might place Z.H. pursuant to paragraph 6 of this Agreement.

17. The Petitioners expressly agree that the educational program provided for Z.H. by the District from the beginning of time through the effective date of this Settlement Agreement and Release satisfied the Board's obligation to provide Z.H. with a FAPE in accordance with applicable federal and State law. Under no circumstances shall Z.H.'s attendance at Y.A.L.E. or any other school at which Petitioners might place Z.H. pursuant to Paragraph 3 of this Agreement be deemed an acknowledgment that the Board did not offer Z.H. an appropriate program and placement at any time, or that the Board failed to comply with any State or federal law at any time, or that attendance at Y.A.L.E. or any other school at which Petitioners might place Z.H. pursuant to Paragraph 3 of this Agreement is required to provide Z.H. with a FAPE.

18. It is expressly agreed that the Board's obligations under this Settlement Agreement and Release, financial and otherwise, as set forth in the above paragraphs, represents the Board's total

obligations, financial and otherwise, to Petitioners with respect to Z.H.'s education from the beginning of time through the end of time. It is expressly agreed that the Board's financial obligation under this Agreement represents the Board's total financial obligation to Petitioners with respect to Z.H.'s education, and that Petitioners agree to release the Board from any and all further educational responsibility or financial responsibility for Z.H. from the beginning of time through the end of time other than as set forth in this Agreement.

19. It is further expressly agreed and acknowledged that the Board shall have no obligation, financial or otherwise, for or towards Z.H.'s education beyond June 30, 2021. Petitioners agree and acknowledge that any education and related services they may desire or seek after June 30, 2021 will be provided by them outside of the District, will be funded entirely by them, and they will not be entitled to reimbursement, education, or services of any kind from the Board. However, pursuant to Paragraph 4 of this Agreement, the Board acknowledges that if Z.H. attends ESY 2021 it shall reimburse the Petitioners an amount up to the Y.A.L.E. base tuition for ESY 2021.

20. It is acknowledged and agreed that, with the exception of the counsel fee payment described in Paragraph 9 of this Agreement, each party shall bear their own attorney's fees, costs, expert

witness fees, and/or costs of evaluations and expert reports for the entirety of any matter or matters related to the subject matter of this Settlement Agreement and Release.

21. In the event that Z.H. is no longer domiciled in the District, the terms and conditions of this Agreement shall become null and void and the Board's financial and other responsibilities under this Agreement shall immediately cease.

22. In consideration for the Board's financial obligations described above, the Petitioners expressly agree to, and hereby do, waive and release any and all other claims that they have or may have against the Board, financial or otherwise, except for the Board's obligations set forth in this Settlement Agreement and Release, from the beginning of time through the date of this Settlement Agreement and Release.

23. This Settlement Agreement and Release resolves all issues between the parties, known or unknown, specifically raised in the Petition for Due Process or that could have possibly been raised from the beginning of time through the date of this Agreement. The Petitioners agree that an Administrative Law Judge will issue a Decision of Settlement/Final Decision and the Petitioners agree not to file a Petition for Due Process which seeks to address any issues that were raised or could have been raised in the instant Petition for Due Process from the beginning of time through the date of this

Settlement Agreement and Release. Nothing contained herein shall be interpreted as preventing the parties from bringing an action to enforce the terms of this Settlement Agreement and Release.

24. Petitioners and Z.H., or any persons or entity acting on his/her/their behalf, agree that they waive any and all rights to file any suit, or cause any suit, demand, administrative, judicial or other proceeding, claim, complaint or other action of any kind against the District, Board or its officers, agents, employees, attorneys, insurers or assigns based upon any set of facts which occurred or may occur from the beginning of time through the date of this Settlement Agreement and Release. It is expressly understood, however, that either party may bring an action to enforce the terms of the within Settlement Agreement and Release. However, should the need arise to file due process or lawsuit in the future, this Settlement Agreement and Release can be used by either party as background.

25. The parties agree to submit this Settlement Agreement and Release to an Administrative Law Judge for approval in full settlement of all issues that were or could have been raised in the Petition. Petitioners' Petition shall be deemed settled and Petitioners agree not to file a Petition for Due Process or lawsuit which seeks to address any of the issues that were or could have been the subject of the Petition, the terms of the parties' obligations as set forth in

this Settlement Agreement and Release or any issues pertaining to the educational and related services provided to Z.H. through the date of this Settlement Agreement and Release. Approval of this Settlement Agreement and Release will be recommended at the Board's meeting following receipt of the Petitioners' signatures.

26. Nothing contained herein shall be interpreted as preventing the parties from bringing an action to enforce the terms of this Settlement Agreement and Release. If approved, the Settlement Agreement and Release shall be incorporated into a Final Order by an Administrative Law Judge.

27. The terms of this Settlement Agreement and Release represent the compromise of disputed claims between the parties. The Agreement shall not be treated as an admission on the part of the District that it has not offered Z.H. an appropriate educational program and placement from the beginning of time through the date of this Settlement Agreement and Release. It shall not be treated as an admission that the any of the parties have engaged in any wrongdoing or that any of the parties has failed to act in accordance with the law.

28. Petitioners, on behalf of themselves and Z.H., and the Board mutually release and forever discharge each other, his/her/its/their officers, employees, administrators, agents and servants from any and all past, present or future claims, whether

known or unknown to Petitioners or Z.H. arising out of events that have occurred prior to the date on which this Settlement Agreement and Release is ratified by the Board, other than as set forth in this Agreement.

29. This Settlement Agreement and Release will be presented and recommended to the Board at the first possible regularly scheduled meeting, is subject to ratification by the Board, and is without prejudice to any party if the terms are not ratified by the Board. Petitioners acknowledge and understand that this Agreement cannot be placed on the Board's agenda unless and until the Board first receives a fully executed copy of this Agreement. The representatives of the District shall recommend the terms of this Settlement Agreement and Release to the Board for approval at its first available regularly scheduled meeting upon receiving a fully executed copy of this Agreement from Petitioners.

30. The parties recognize that each has been represented by legal counsel and that they sign this within Settlement Agreement and Release as their own voluntary act and deed, and that they understand the duties and obligations enumerated herein. The parties further state that they are fully satisfied with the legal representation provided by their respective counsel.

31. The drafting and negotiation of this Settlement Agreement and Release have been participated in by each of the parties and their

respective counsel and, for all purposes, this Settlement Agreement and Release shall be deemed to have been drafted jointly by each of the parties. No ambiguity shall be resolved against any party based upon authorship.

32. The parties understand and agree that neither shall be considered a prevailing party under any statute, common law, or otherwise as a result of this Settlement Agreement and Release.

33. It is expressly understood and agreed that this Settlement Agreement and Release shall be subject to the laws of the State of New Jersey.

# THE REMAINDER OF THIS

# PAGE IS INTENTIONALLY

# LEFT BLANK

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the date and year set forth below.

WITNESS:

*[signature]*

Business Administrator/
Board Secretary

DATED: 11-27-17

CINNAMINSON TOWNSHIP BOARD OF EDUCATION

*[signature: Jean M. Cohen]*

Board President

DATED: 11-29-2017

WITNESS:

*[signature]*

DATED: 11-10-17

*[signature]*

W.H. o/b/o Z.H.

DATED: 11/10/17

WITNESS:

*[signature]*

DATED: 11-10-17

*[signature]*

L.D. o/b/o Z.H.

DATED: 11·10·17