UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

Z.H., WILLIAM HOWARD, and    No. 1:22-cv-01700-NLH-SAK
LISA HOWARD,

                **OPINION**

        Plaintiffs,

    V.

CINNAMINSON TOWNSHIP BOARD
OF EDUCATION and Y.A.L.E.
SCHOOL NJ,

        Defendants.

---

RONALD DESIMONE
P.O. BOX 8379
TURNERSVILLE, NJ 08012-8379

    *Counsel for Plaintiffs.*

ANNE ROBBINS MYERS
COMEGNO LAW GROUP, P.C.
521 PLEASANT VALLEY AVE
MOORESTOWN, NJ 08057

    *Counsel for Y.A.L.E. School NJ*

ALYSSA K. WEINSTEIN
THE BUSCH LAW GROUP
450 MAIN STREET
THIRD FLOOR
METUCHEN, NJ 08840

    *Counsel for Cinnaminson Township Board of Education.*

**HILLMAN**, District Judge

Currently before the Court are the Y.A.L.E. School, NJ's ("YALE") and Cinnaminson Township Board of Education's ("Cinnaminson") (collectively, "Defendants") Motions to Dismiss

Z.H., William Howard, and Lisa Howards' ("Plaintiffs") Second
Amended Complaint ("SAC") (ECF 17, 19).  For the reasons that
follow, the Court will dismiss the SAC.

**BACKGROUND**

I.    The IDEA

Though Plaintiffs assert claims under laws other than the
Individuals with Disabilities Education Act, 20 U.S.C. § 1400,
et seq. (the "IDEA"), the thrust of their complaint is an appeal
of a decision by a state Administrative Law Judge ("ALJ")
denying them relief under that statute.  Congress enacted the
IDEA to, among other things, ensure "the rights of children with
disabilities and parents of such children are protected."  20
U.S.C. § 1400(d)(1)(A)-(B).

The IDEA requires that every child with a disability
receive a free appropriate public education (a "FAPE") from
their public school if that school receives federal funding
under the IDEA.  Id. at § 1412(a)(1)(A); 34 C.F.R. § 300.101(a).
The term "free appropriate public education" means the provision
of "special education and related services" that meet certain
criteria.  20 U.S.C. § 1401(9).  The IDEA also guarantees
parents of disabled children a right to participate in the
educational programming offered to their children.

To ensure that public schools adequately provide a FAPE and
that the rights of disabled students and their parents are not

infringed, Congress enacted various "procedural safeguards" that participating public schools must comply with.  Id. at § 1412(6)(A); id. at § 1415(a).  One such procedural safeguard provides standards for adjudicating disputes about whether a school has adequately provided a FAPE.  Per Congress' requirements, these disputes begin with the filing of a "due process petition" or "due process complaint."  Either the public school or the child may file a due process complaint, and that complaint may seek relief with respect to "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  Id. at § 1415(b)(6).

The IDEA contemplates that it is the State Educational Agency that is responsible for making sure that there are fair and impartial procedures in place to handle any due process petition.  Id. at §1415 (f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency."); id. at § 1415(e)(1) ("Any State educational agency or local educational agency that receives assistance under this subchapter shall ensure that procedures

3

are established and implemented to allow parties to disputes involving any matter.").

Once a due process complaint has been filed, Congress has set strict deadlines by which certain events must occur.  See Id. at § 1415(f)(1)(B)(ii) (referencing timelines "applicable [to] a due process hearing"); 34 C.F.R. § 300.515(a) (setting forth a strict timeframe for due process petition resolution); N.J.A.C. 6A:14-2.7(j) (same).  In New Jersey, "[a] due process hearing is an administrative hearing conducted by an administrative law judge" (an "ALJ") in the Office of Administrative Law (the "OAL").  N.J.A.C. 6A:14-2.7(a).

## JURISDICTION

The Court has subject matter jurisdiction because Plaintiffs assert a claim under a federal statute, the IDEA.[1] See 28 U.S.C. § 1331.  It has supplemental jurisdiction over

---

[1] Plaintiffs' Second Amended Complaint asserts federal question jurisdiction under "20 U.S.C.S. § 1415 (2)" (ECF 16 at 2) as well as the IDEA as a whole.  Id.  However, this appears to be a typographical error as no such provision exists.  Rather, Plaintiffs appear to assert a cause of action under 20 U.S.C. § 1415(i)(2) which allows for a party aggrieved by findings or a decision under the IDEA's administrative procedures to file a civil action "in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." Id.  While the Court ultimately concludes that Plaintiffs do not have a cognizable federal claim based on the IDEA this does not deprive the court of jurisdiction as the Court always retains jurisdiction to determine its jurisdiction.  United States v. Ruiz, 536 U.S. 622, 628 (2002) ("it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.").

4

Plaintiffs' common-law claims.  See 28 U.S.C. § 1367(a).

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

For purposes of this motion to dismiss, the Court takes the facts alleged in the complaint as true and will only recount those salient to the instant motion.  Z.H. was a child who was receiving special education services from YALE.  (ECF 16 at 3-4).  In 2017, Z.H.'s parents filed a due process petition against Cinnaminson with the New Jersey Department of Education ("NJDOE") and unilaterally placed Z.H. at YALE where he attended school from 9th through 12th grade.  (ECF 16-1 at 4).

The due process petition was resolved by way of a settlement agreement (the "2017 Agreement") in which Z.H.'s parents agreed to pay the first $10,000 of Z.H.'s annual tuition at YALE and that Cinnaminson would reimburse them for the base tuition expended in excess of the first $10,000.  (Id.)  The 2017 Agreement was approved by an ALJ and memorialized on an administrative docket in December 2017 as a "Final Decision Approving Settlement."  (Id.).  The 2017 Agreement provided that Cinnaminson's reimbursement obligation would continue after June 2021 "if and only if Z.H. is not eligible to, and does not, graduate high school by June 30, 2021." (ECF 16-5 at ¶ 4).

In addition, in the 2017 Agreement, Plaintiffs waived their right to a FAPE and to hold Cinnaminson accountable for a FAPE while Z.H. was a student at YALE.  (See ECF 16-5 at ¶ 8 ("[I]t

is agreed and acknowledged that the Petitioners may challenge the appropriateness of only the related services offered by the District[.]"); see also id. at ¶¶ 16-17 (agreeing to indemnify and hold harmless Cinnaminson related to any services that Z.H. might receive from YALE); id. at ¶ 17 ("Under no circumstances shall Z.H.'s attendance at [YALE]. . . be deemed an acknowledgment that [Cinnaminson]. . . is required to provide Z.H. with a FAPE.")).

In March 2020, the COVID-19 pandemic hit the United States and YALE modified its teaching procedures between March 2020 and June 2021 such that it was impossible for Z.H. to complete his Individualized Education Plan ("IEP") goals and thereby receive a FAPE.  (ECF 16 at 3-4).  Specifically, Z.H.'s IEP contemplated that he would receive "social skills training, community-based instruction, transitional program training, mobility program training, vocational program training, health and wellness training, student-to-student contact, contact with non-disabled peers or situational environmental learning."  (Id. at 6). Instead, because of the pandemic, YALE switched to virtual and semi-virtual instruction through June 2021 and Z.H. was therefore unable to achieve many of his IEP goals.  (Id. at 6-12).

On June 2, 2021, Z.H. filed a due process petition and a request for emergent relief with NJDOE.  (See ECF 16-1 at 3).

Z.H. sought to have an ALJ at the OAL set aside the 2017 Agreement so that he could continue his placement at YALE with reimbursement from Cinnaminson.  (Id.)  The emergent portion of the application was addressed on June 11, 2021 and the remaining due process portion of the matter proceeded onward.  (Id.)  In connection with the merits of the due process proceedings, the ALJ entertained motion practice.

Relevant to the case at bar, Cinnaminson moved to dismiss the petition with prejudice and argued that the 2017 Agreement was controlling in this matter and that there had been no finding by YALE that Z.H. was ineligible to graduate in June 2021.  (Id. at 10-11).  Cinnaminson argued that it fulfilled its responsibilities under the agreement and that the OAL was not the appropriate tribunal to entertain voiding the 2017 Agreement.  (Id. at 11).

The ALJ agreed with Cinnaminson and concluded that barring an affirmative statement from YALE that Z.H. was not eligible to graduate he was eligible to graduate for the purposes of construing the 2017 Agreement.  (Id. at 15).  The ALJ also concluded that the OAL did not have the jurisdiction to enforce or set aside the 2017 Agreement.  (Id. at 17).  Finally, the ALJ concluded that Z.H. had not met his burden to show that Cinnaminson should be responsible for payment of extended learning beyond June 30, 2021.  (Id. at 19).

Following that decision by the ALJ, Plaintiffs filed the instant matter in federal court.  (ECF 1).  The instant matter contains seven counts.  Count One is styled as an appeal of the ALJ's decision under the IDEA.  (ECF 16 at 3–16).  The next three counts are against Cinnaminson for alleged violation of the 2017 Agreement: breach of contract (Count Two), breach of the implied covenant of good faith and fair dealing (Count Three), and unjust enrichment (Count Four).  (Id. at 14-21).  Counts Five through Seven are against YALE, not for breach of the 2017 Agreement to which it was not a party, but for breach of its separate contracts with the Plaintiff parents to provide educational services to Z.H. in the 2019-2020 and the 2020-2021 school years: breach of contract (Count Five), breach of the implied covenant of good faith and fair dealing (Count Six), and unjust enrichment (Count Seven).  (Id. at 21-29).

The Court will begin with Count One.  As explained below, this Court, as did the ALJ below, lacks the authority to adjudicate the contractual dispute between the parties under the IDEA.  Accordingly, Plaintiffs fail to state a claim under the IDEA and the SAC will be dismissed.  Consistent with the reasoning behind that decision, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

**DISCUSSION**

I.   Standard of Review

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a

9

plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only

consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

    I.   Analysis

     a. Plaintiffs' Appeal of the ALJ's Opinion

At the outset, the appeal of the ALJ's decision is clearly a contractual dispute cloaked in IDEA terms.  This joins the issue of the appropriate standard to apply to Cinnaminson's motion to dismiss the appeal of the ALJ's decision.  Although Cinnaminson styles this portion of its motion as a motion under Rule 12(b)(6), the body of its motion makes clear that it is asking the Court decide the merits of the appeal by applying the "modified de novo" review standard as defined by the Third Circuit.  (ECF 19 at 11).

A review of that standard bears repeating here.  District

"Courts are to give due weight to the factual findings of the ALJ in IDEA cases." S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260, 269 (3d Cir. 2003). This is conceived of as a "modified de novo review" in which "[f]actual findings from the administrative proceedings are to be considered prima facie correct." Id. at 270. In practice, "this means that a District Court must accept the state agency's credibility determinations unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion. In this context the word 'justify' demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court." Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S., 381 F.3d 194, 199 (3d Cir. 2004) (internal quotation marks and citations omitted) (emphasis in original). Questions of law, however, are reviewed de novo. N. Highlands Reg'l High Sch. Bd. of Educ. v. C.E. on behalf of C.E., No. 18-08999, 2019 WL 5975548, at *4 (D.N.J. Nov. 12, 2019) ("For questions of law, a district court applies a de novo standard to the review of administrative decisions in IDEA cases.").

One salient difference between district court review in IDEA cases versus other agency appeals is the fact that the district court is empowered to hear additional evidence at the request of either party. 20 U.S.C. § 1415(i)(2)(C)(ii) (stating that the district court "shall hear additional evidence at the

12

request of a party"). The Third Circuit has stated that a
district court could properly exclude inappropriate proffered
evidence such as evidence that was "cumulative and an improper
embellishment of testimony previously given at an administrative
hearing" but that it "must evaluate a party's proffered evidence
before deciding to exclude it." Susan N. v. Wilson Sch. Dist.,
70 F.3d 751, 759 (3d Cir. 1995).

The Third Circuit has declined to devise a bright line rule
regarding what kind of evidence may be excluded but has advised
that a district court may approach the inquiry in a similar
manner to how to would decide to include or exclude evidence in
a civil proceeding. Id. "While a district court appropriately
may exclude additional evidence, a court must exercise
particularized discretion in its rulings so that it will
consider evidence relevant, non-cumulative and useful in
determining whether Congress' goal has been reached for the
child involved." Id. It is this framework that the Court
ordinarily uses in adjudicating an appeal from an ALJ's
decision. In the mine-run IDEA case, such appeals most often
concern an ALJ's decision on the scope of a FAPE owed by a
school district to a disabled child.

However, this matter is decidedly different. As previously
stated, though technically an appeal of a decision by an ALJ
adjudicating a due process petition, this matter is at its core

13

a contract dispute.  While both parties frame this case as such an appeal, Plaintiffs are not, through their denied due process petition and appeal, seeking a renewed evaluation of the scope of a FAPE determined by an ALJ.  Rather, whether through the procedural mechanism of a due process petition or, barring that, a common law contract claim, the relief they truly seek is a setting aside of the 2017 Agreement in which they waived the right to challenge Cinnaminson on the basis that Z.H. did not receive a FAPE.  (See ECF 16-5 at ¶ 8).

The law is clear that parties in a due process proceeding may resolve the dispute in a way that waives a claimant's right to a FAPE or other protections under the IDEA.  Ballard ex rel. Ballard v. Philadelphia Sch. Dist., 273 F. App'x 184, 188 (3d Cir. 2008) ("A parent can waive her child's right to a FAPE."); I.K. ex rel. B.K. v. Sch. Dist. of Haverford Twp., 961 F. Supp. 2d 674, 688 (E.D. Pa. 2013), aff'd sub nom. I.K. ex rel. B.K. v. Haverford Sch. Dist., 567 F. App'x 135 (3d Cir. 2014) ("[H]ad the hearing officer concluded that a valid settlement agreement existed, this determination would have substituted for a FAPE.").  Given this waiver, Plaintiffs filed the due process petition in order to have the OAL void the 2017 Agreement.[2]  (See

---

[2] To be clear, the ALJ notes in his decision that the Plaintiffs argued in the alternative that the 2017 Agreement did not obviate Cinnaminson's requirement to provide a FAPE.  (ECF 16-1 at 8-9).  This argument, though, is an argument regarding

ECF 16-1 at 8).

Having been denied that relief below, the Plaintiff now seeks this Court's de novo review of the ALJ's legal determinations related to the 2017 Agreement.  (See ECF 16 at 3-4 ("The plaintiff now comes before this court for a de novo review of that decision[.]").  Consistent with that position, Plaintiffs make a general request that the Court hear "additional testimony to determine whether the COVID-19 Governmental shutdowns created a substantial change of circumstances as to negate the agreement[']s termination of benefits to the plaintiff as of June 30, 2021 and to provide that which was not provide[d] to the plaintiff during the pandemic."  (Id. at 12).  As noted above, taking additional evidence is a procedural remedy available under the IDEA for a plaintiff asserting a viable IDEA claim.

In his decision, the ALJ made two principal determinations. First, the ALJ determined that Plaintiffs' argument that their previous settlement agreement should be set aside was not properly before him and that "the OAL does not have the jurisdiction to either enforce or set aside an enforceable contract."  (ECF 16-1 at 17).  He concluded that the issue of the enforceability of the settlement agreement could only be

---

contract interpretation that, as explained below, is not properly before this Court.

addressed outside the administrative context in a court of competent jurisdiction.  (Id. at 19).

Despite that holding, the ALJ continued on to make factual determinations and then applied those findings in a process that can only be described as interpreting the rights and obligations of the parties under the contract between the two.  In his second principal determination, the ALJ held that "barring an affirmative statement from YALE that Z.H. is not eligible to graduate, he is eligible to graduate from the high-school program anticipated in the 2017 Agreement."  (Id. at 15).  Because Z.H. was eligible to graduate, the ALJ reasoned, Cinnaminson was not required to continue paying for Z.H.'s education per the 2017 Agreement.  (Id.)  Despite the ALJ's two-step process, it is this Court's view that the only question properly before it on this appeal pursuant to the IDEA is the ALJ's determination as to whether he had the power to set aside the 2017 Agreement.  That is a question of law, and the Court considers it de novo.  N. Highlands Reg'l High Sch. Bd. of Educ., 2019 WL 5975548 at *4.

One ALJ of New Jersey's OAL has previously held that it is "without authority or jurisdiction to either enforce or set aside an enforceable contract.  Such enforcement (or set aside) is within the purview and jurisdiction of our State's Superior Court or the United States District Court, not the OAL."  A.P.

v. Dennis Township Board of Education, 1998 N.J. AGEN LEXIS 346,
*14-15.  This interpretation of the IDEA is consistent with the
statutory language.  By the very terms of the IDEA, a settlement
agreement that is entered into to resolve a due process
proceeding is "enforceable in any State court of competent
jurisdiction or in a district court of the United States."  20
U.S.C. § 1415(e)(2)(F)(3).

It is also consistent with the law in this Circuit.  The
Third Circuit has noted that a settlement agreement dealing with
rights under the IDEA is a binding contract just as any other
contract and where voluntarily entered, it should be enforced as
written.  D.R. by M.R. v. E. Brunswick Bd. of Educ., 109 F.3d
896, 898 (3d Cir. 1997) ("[T]he settlement agreement was
voluntarily and willingly entered by the parties.  It is
therefore a binding contract between the parties and should have
been enforced as written.").  Thus the Court finds no error in
the ALJ's determination that the OAL simply did not have the
power to void, enforce or otherwise interpret the 2017
Agreement.

Accordingly, the Court declines to hear the additional
evidence that Plaintiffs propose to proffer because it is not
relevant to the purely legal issue of whether the ALJ had the
power to adjudicate the parties contractual dispute.  Plaintiffs
state that they want to offer testimony "to determine whether

17

the COVID-19 Governmental shutdowns created a substantial change of circumstances as to negate the agreement[']s termination of benefits to the plaintiff as of June 30, 2021 and to provide that which was not provide[d] to the plaintiff during the pandemic."  (ECF 16 at 12).  By the very terms of the request, Plaintiffs seek to introduce evidence for an improper purpose, to negate the terms of the 2017 Agreement by engrafting a force majeure provision.  This proposed evidence simply would not be useful to the Court in determining the issue before it — whether the ALJ erred in determining that he did not have the power to set aside the 2017 Agreement.  Susan N., 70 F.3d at 759.  The Court concludes that the ALJ did not err in making that determination.  The ALJ correctly determined that it lacked the authority under the IDEA to adjudicate the parties purely contractual dispute.

Unlike the ALJ, however, this Court will not opine on whether the conditions of the 2017 Agreement were satisfied in connection with Z.H.'s eligibility for graduation in June 2021. Once the ALJ determined that he did not have jurisdiction over the contractual dispute under the IDEA, it is the view of this Court that he should not have proceeded to construe the terms of the 2017 Agreement.  See G. W. v. Ringwood Bd. of Educ., 28 F.4th 465, 473 (3d Cir. 2022) ("To the extent that the remainder of Appellants' claims address the validity of the settlement

18

agreement on the basis of New Jersey contract law, we leave it to the District Court in the exercise of its discretion to consider in the first instance whether supplemental jurisdiction is appropriately taken to resolve that matter pursuant to 28 U.S.C. § 1367.").

The ALJ's factual determination as to whether a condition precedent had been satisfied which would have triggered additional payments by Cinnaminson amounted to an advisory opinion which, for its part, this Court may not issue.  This Court will not compound the ALJ's error by expressing an opinion about the scope and enforceability of an agreement over which it has no jurisdiction.  Hamilton v. Bromley, 862 F.3d 329, 337 (3d Cir. 2017) ("Since we lack Article III jurisdiction over this case, we cannot resolve whether [] abstention is appropriate because a judicial decision rendered in the absence of a case or controversy is advisory, and federal courts lack power to render advisory opinions.") (internal quotation marks omitted).

Further, the Court notes that the Third Circuit clarified in G.W. v. Ringwood Board of Education, 28 F.4th 465 (3d. Cir. 2022) that a district court has jurisdiction over an appeal of a Decision Approving Settlement entered by an ALJ even where the settlement terms were negotiated outside of the OAL's mediation process.  The key distinction between G.W. and the instant case is that Plaintiffs are not seeking to appeal a Decision

Approving Settlement, rather they have filed a new due process petition seeking to set aside their previous settlement that had been in place for approximately four years.  (ECF 16-1 at 3).  The ALJ determined that the settlement agreement controls, and the question of whether petitioner has been provided with FAPE "is a false premise" where the real question presented in the petition is "who will pay for this additional year at YALE?"  (ECF 16-1 at 14).  The ALJ explained that this question "was dealt with in the Settlement Agreement from 2017."  (Id.).

As discussed above, this Court may review the ALJ's determination under the IDEA.  This Court has done so, and determines that the ALJ did not err in finding that the settlement agreement controls, and the real issue is one of contract interpretation.  (See ECF 16-1 at 15).  To the extent Plaintiffs seek this Court's substantive review of the settlement agreement, the appropriate mechanism would have been an appeal of the ALJ's Decision Approving Settlement back in 2017.  An appeal of such decision at this time would be time-barred by the ninety-day statute of limitations.  K.S. v. Hackensack Bd. of Educ., No. 16-2155, 2017 WL 788207, at *4 (D.N.J. Mar. 1, 2017) ("The aggrieved party 'shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation ... in such time as the State law allows.' 20 U.S.C. §

1415(i)(2)(B). New Jersey's time limit is also ninety days. See
N.J.A.C. 6A:14-2.7(v)").

Thus, this Court will affirm the ALJ's decision that the
prior settlement agreement governs and "the OAL does not have
jurisdiction to either enforce or set aside an enforceable
contract."  (ECF 16-1 at 17).  Therefore, Plaintiffs' IDEA claim
must be dismissed.

### b. Plaintiffs' State Law Claims

Having resolved the appeal of the ALJ's decision, the Court
will decline to exercise pendent jurisdiction over Plaintiffs'
state law claims.[3]  Robert W. Mauthe, M.D., P.C. v. Optum Inc.,
925 F.3d 129, 135 (3d Cir. 2019) ("[A] court does not err if it
declines to exercise supplemental jurisdiction over state claims
after it dismisses a federal claim on which its jurisdiction is
based in the absence of extraordinary circumstances."); G. W.,
28 F.4th at 473 ("To the extent that the remainder of
Appellants' claims address the validity of the settlement
agreement on the basis of New Jersey contract law, we leave it
to the District Court in the exercise of its discretion to

---

[3] In light of this Court's decision to dismiss Plaintiffs' IDEA
claim for failure to state a claim and to decline to exercise
supplemental jurisdiction over Plaintiffs' state law claims, it
need not reach Defendants' contentions for dismissal of those
claims on the basis of Rule 12(b)(1), the New Jersey Emergency
Health Powers Act, N.J. Stat. Ann. § 26:13-1, et seq., Beukas v.
Bd. of Trustees of Fairleigh Dickinson Univ., 605 A.2d 776 (N.J.
Super. Ct. Law Div. 1991), or any other related arguments.

consider in the first instance whether supplemental jurisdiction is appropriately taken to resolve that matter pursuant to 28 U.S.C. § 1367.").

## CONCLUSION

As stated above, the essence of this matter is a contractual dispute.  If Plaintiffs wish to void the 2017 Agreement, they may go to state court to seek that relief in the absence of diversity jurisdiction.  G.W., 28 F.4th at 473 (holding that it is up to "the District Court in the exercise of its discretion to consider in the first instance whether supplemental jurisdiction is appropriately taken to resolve that matter pursuant to 28 U.S.C. § 1367.").  Therefore, Defendants' Motions to Dismiss the SAC (ECF 17, 19) will be granted.

An appropriate Order will be entered.


Date: July 5, 2023                    s/ Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.